## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ANTHONY WADE, ) | |
|    Plaintiff, ) | Civil Action File No. |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| CINGO, INC., ) | |
|    Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff, Anthony Wade, by and through undersigned counsel, Barrett & Farahany, and hereby files suit against Defendant, Cingo, Inc., showing the Court as follows:

### Introduction

1. This is an action for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").

### Parties

2. Plaintiff is a United States citizen and resident of South Carolina.

3. Defendant is a Georgia corporation with its principal place of business in Georgia.

4. Defendant may be served at 221 Peachtree Battle Ave NW, Atlanta, GA, 30305.

5. Defendant maintains an office in Marietta, Georgia.

6. Defendant maintains an office in Sandy Springs, Georgia.

7. Defendant engages in substantial business within the Northern District of Georgia.

8. At all relevant times, Defendant employed fifteen (15) or more employees for the requisite duration under Title VII.

## Jurisdiction and Venue

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises under Title VII.

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises under Title VII.

11. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1).

## Statement of Facts

12. Plaintiff began working for Defendant in June 2020.

13. Plaintiff was employed as a Pest Control Technician.

14. When Plaintiff started working for Defendant, he was assigned to a more senior technician for on-the-job training.

15. Plaintiff was assigned to Shawn Brantley for training.

16. Brantley is White.

17. Plaintiff is Black.

18. Brantley began making comments about the race-related protests following the death of George Floyd.

19. Brantley told Plaintiff that he (Brantley) desired to be at the protests.

20. Brantley told Plaintiff that, if he (Brantley) were at the protests, he would kill Black protestors.

21. Brantley told Plaintiff that, if he (Brantley) killed Black protesters, he would "get away with it because [he is] White."

22. Brantley was supervised by Jonathan Powell.

23. Plaintiff was supervised by Powell.

24. Powell is White.

25. Plaintiff reported Brantley's comments, including those referenced in Paragraphs 18-21, to Powell.

26. Brantley was not disciplined.

27. In or around November 2020, Powell began making comments to Plaintiff suggesting that Plaintiff was a drug dealer.

28. Plaintiff asked why Powell would suggest that Plaintiff was a drug dealer.

29. Powell told Plaintiff that he (Powell) thought Plaintiff must deal drugs because Plaintiff is Black drove a nicer vehicle.

30. Plaintiff verbally objected to Powell's comments referenced in Paragraph 27 and 29 on the grounds that they were racially discriminatory.

31. Plaintiff then discovered that there is a "commercial rate" of pay when servicing commercial accounts.

32. The commercial rate of pay is higher than the residential rate.

33. Plaintiff and other Black technicians serviced both residential and commercial accounts.

34. Plaintiff and other Black technicians were paid the lower residential rate when servicing commercial accounts.

35. White technicians received the commercial rate when they worked on commercial accounts.

36. When Plaintiff took his earned vacation or sick leave days, he was required to make up hours on the weekend.

37. Because Plaintiff was required to make up his hours, he was effectively denied his earned vacation and sick leave.

38. Other Black technicians were required to make up vacation and sick leave hours.

39. White technicians were not required to make up vacation and sick leave hours.

40. In May 2021, Plaintiff took two days of sick leave.

41. Powell required Plaintiff to provide a physician's note.

42. Powell did not require White technicians to provide physician's notes when they were out sick.

43. Plaintiff asked Powell why Plaintiff had to provide a physician's note when White employees did not.

44. Powell told Plaintiff that Plaintiff needed to provide a physician's note because he (Powell) thought that Plaintiff was faking illness.

45. At the time of the events detailed in Paragraphs 40-44, Plaintiff had vacation time available.

46. Plaintiff provided a physician's note for the two days of sick leave referenced in Paragraph 40.

47. Two days were deducted from Plaintiff's accrued sick leave.

48. Plaintiff was required to make up the two days he was out by working the weekend.

49. On or about June 7, 2021, Plaintiff had a discussion with Bob Niven.

50. Niven held the title Operations Manager.

51. Niven was Powell's supervisor.

52. In the discussion referenced in Paragraph 49, Plaintiff asked Niven about why he (Plaintiff) was required to make up work while still losing vacation and sick days.

53. Plaintiff told Niven that he (Plaintiff) believed the requirement to be enforced only on Black employees.

54. Niven told Plaintiff that "other employees" were not required to make up days when leave was available.

55. Niven declined to confirm or deny whether the requirement was applied along racial lines.

56. Plaintiff was scheduled to go on vacation on Saturday, June 12, 2021.

57. Plaintiff's vacation was scheduled to last one week.

58. During the week of June 7, 2021, Powell told Plaintiff that he (Plaintiff) was required to work the weekend of June 12-13 to make up time Plaintiff would miss during the week of his vacation.

59. Plaintiff told Powell that he (Plaintiff) was leaving town on June 12 and could not work.

60. Plaintiff informed Powell that he (Plaintiff) had already made hotel reservations and could not get a refund for the weekend.

61. Powell informed Plaintiff that Plaintiff was required to provide documentation showing that he (Plaintiff) was leaving town.

62. White employees were not required to account for their time when on vacation.

63. White employees were not required to provide proof of location for vacations.

64. Plaintiff reported the interaction detailed in Paragraphs 58-61 to Niven.

65. On the morning of June 12, 2021, Niven asked Plaintiff to call him (Niven).

66. Plaintiff called Niven at approximately 7:30 A.M. on June 12, 2021.

67. Niven asked if an employee of Defendant could pick up Plaintiff's work truck so that it could be used.

68. Plaintiff told Niven that his (Plaintiff's) reservation was only a few hours' drive away, so Plaintiff had time to drop off the truck at Defendant's location.

69. Plaintiff then drove his work truck to Defendant's location and dropped it off.

70. On June 14, 2021, Defendant terminated Plaintiff.

71. Defendant's reasoning was that, when Plaintiff dropped off the truck on the morning of June 12, 2021, it showed that Plaintiff must have been lying about being out of town.

72. Plaintiff's vacation was approximately 2 ½ to 3 hours' drive away.

73. Consistent with virtually every hotel in the country, the hotel Plaintiff stayed at did not allow check-in until the late afternoon.

74. Plaintiff had ample time to drop off his work truck the morning of June 12, 2021, and make it to the hotel by check-in.

75. Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2021.

76. On November 21, 2022, the EEOC issued its Notice of Right to Sue.

## Count I:  Race Discrimination
### (Title VII)

77. Plaintiff reasserts and incorporates Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Plaintiff is a member of a protected class by virtue of his race (Black).

79. Plaintiff was paid less than similarly situated White employees, as shown in Paragraphs 31-35.

80. Plaintiff was effectively denied vacation and sick time, as shown in Paragraphs 36-37, 40, 47, and 56-58.

81. White employees did not suffer the same loss of vacation and sick time.

82. Plaintiff was subjected to higher scrutiny than White employees whenever he took leave, as shown in Paragraphs 41-46 and 61-63.

83. Plaintiff was terminated.

84. Plaintiff's termination was connected to his use of accrued leave.

85. Plaintiff's termination was connected to the heightened scrutiny Plaintiff received versus White employees when taking leave.

86. A similarly situated White employee would not have been terminated.

87. Defendant's rationale for terminating Plaintiff is clearly pretextual, as shown in 68 and 71-74.

88. Plaintiff is therefore entitled to recover lost wages plus interest, the value of his lost leave plus interest, reinstatement or front pay, compensatory damages for emotional distress and harm to reputation, other compensatory damages, punitive damages, attorney fees, and costs.

## Count II:  Retaliation
### (Title VII)

89. Plaintiff reasserts and incorporates Paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90. The reports and objections contained in Paragraphs 25, 30, 43, 52-53, and 64 constituted protected activity under Title VII.

91. Plaintiff was subjected to higher scrutiny whenever he took leave.

92. Plaintiff suffered the adverse action of termination.

93. Causation may be inferred by the close timing between Plaintiff's protected activity involving Niven in Paragraphs 52-53 and 64 and the termination.

94. Defendant's alleged reason for terminating Plaintiff is pretext.

95. Plaintiff is therefore entitled to recover lost wages plus interest, reinstatement or front pay, compensatory damages for emotional distress and harm to reputation, other compensatory damages, punitive damages, attorney fees, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A) Trial by jury as too all issues;

B) Judgement in his favor;

C) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

D) Lost wages;

E) Injunctive relief of reinstatement and prohibition of Defendant from further unlawful conduct of the type described herein, or in lieu thereof, front pay;

F) The value of all leave improperly denied to him;

G) General damages for mental and emotional suffering;

H) Punitive damages;

I) Prejudgment interest at the rate allowed by law;

J) Reasonable attorneys' fees and litigation costs; and

K)     Any such other and further relief as the Court may deem appropriate.

This 20th day of February, 2023.

**BARRETT & FARAHANY**

s/ *Micah Barry*
Micah Barry
Georgia Bar No. 103184

*Counsel for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
micah@justiceatwork.com

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 20th day of February, 2023.

                                                Respectfully submitted,

                                                **BARRETT & FARAHANY**

                                                *s/ Micah Barry*

                                                Micah Barry
                                                Georgia Bar No. 103184

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 20th day of February, 2023.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184